1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

### EASTERN DISTRICT OF CALIFORNIA

8

| | | |
|---|---|---|
| EDWARD HUNGA, | ) | 1:09cv01852 DLB |
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

9
10
11
12
13
14
15
16

## BACKGROUND

17

Plaintiff Edward Hunga ("Plaintiff") seeks judicial review of a final decision of the

18

Commissioner of Social Security ("Commissioner") denying his application for disability

19

insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and

20

XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs,

21

which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States

22

Magistrate Judge.

23

## FACTS AND PRIOR PROCEEDINGS[1]

24

In August 2001, Plaintiff filed applications for DIB and SSI, alleging disability due to

25

hepatitis C, chronic obstructive pulmonary disease ("COPD"), extreme nervousness, depression

26
27

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

28

1

and fatigue.  AR 65-67, 77, 294-96.  After an Administrative Law Judge ("ALJ") issued an unfavorable decision, Plaintiff requested review by the Appeals Council.  AR 9, 10-17.  The Appeals Council denied review on October 13, 2004.  AR 4-6.

While awaiting a response from the Appeals Council, Plaintiff filed applications for DIB and SSI in March 2003.  AR 703-05, 1030-33.  After being denied initially and on reconsideration, Plaintiff requested a hearing before an ALJ.  AR 682-83, 684, 685-89, 691-96, 697-98.  The ALJ issued an unfavorable decision on June 23, 2005.  AR 336-46.  Plaintiff again requested review by the Appeals Council.  AR 334-35.

In July 2005, the District Court remanded the original action for additional proceedings pursuant to a stipulation executed by the parties.  AR 380-82.  The Appeals Council remanded both cases on September 21, 2005.  AR 383-88.

Following remand, ALJ Daniel G. Heely held a supplemental hearing.  AR 1041-81.  On November 8, 2006, the ALJ issued a partially favorable decision.  AR 312-32.  On August 26, 2009, the Appeals Council declined jurisdiction.  AR 305-08.

Hearing Testimony

ALJ Heely held a supplemental hearing on July 10, 2006, in Stockton, California. Plaintiff appeared with his attorney, Charles Oren.  AR 1043.  Vocational expert ("VE") Stephen Schmidt and medical expert ("ME") David John Anderson, M.D., also appeared and testified. AR 1043.

Plaintiff testified that he last worked in 2001.  He has problems breathing and has COPD. He is trying to quit smoking, but averages about four or five cigarettes a day.  He also has hepatitis C.  AR 1046-47.

While he denied illegal drug use, he admitted to cocaine use once about five or six years ago.  He last drank alcohol about 14 or 15 months ago, when he was drinking about a 12-pack of beer a day.  He stopped drinking and entered the Rock of Recovery program, which is a discipleship program. 1047-48.

He has been living in the Rock of Recovery for 14 months.  He does chores around the home.  On a normal day, he might do the dishes, vacuum or run the garbage out.  He sometimes

1  supervises or monitors other program clients, but does not get involved in hiring or firing.  AR
2  1048-50.

3      Although Plaintiff is taking prescription medications, he is not taking any mental health
4  medicines or getting any mental health treatment.  He believed that he last had mental health
5  treatment in 2004 for paranoia, depression and a psychotic episode.  Plaintiff explained that he
6  was not getting mental health treatment because he had missed appointments while living on the
7  street and was dropped from the regional clinic in Ceres.  While he still has depression and
8  episodes of paranoia, he has not reestablished treatment.  AR 1050-52.

9      In response to questions from his attorney, Plaintiff testified that he has problems with
10  fatigue.  He sleeps about four or five hours a night and naps every day.  He also has had leg
11  cramping for six or seven years, but doesn't know the cause.  AR 1052-53.

12      Plaintiff affirmed that he had been to the doctor recently for an irregular heartbeat.  He
13  wore a Holter monitor and they determined he had an irregular heartbeat.  They cut down his
14  high blood pressure medicine.  They also told him to avoid caffeine and stress and to quit
15  smoking.  When he is under a lot of pressure, the problem becomes more prevalent.  After
16  reducing his caffeine and blood pressure medication, his condition is a little better.  AR 1053-55.

17      Plaintiff also testified that he has COPD.  He can walk about 20 or 30 minutes before he
18  has to sit down and rest for 15 or 20 minutes.  AR 1055-56.

19      In the Rock of Recovery program, Plaintiff is monitored to make sure that he is not taking
20  any drugs or alcohol, but he is not tested.  AR 1056.

21      Plaintiff is still depressed.  He has thoughts of taking his own life every couple months.
22  He wants to get out on his own and be able to take care of himself, but gets depressed because he
23  can't work like he used to.  AR 1056-58.  He also has paranoid thoughts every day.  It causes him
24  anxiety and stress.  AR 1058-59.

25      Dr. Anderson, a board certified psychiatrist, also testified as a medical expert.  AR 1059-
26  60.  In response to questions from the ALJ, Dr. Anderson reported that there was evidence of a
27  recurrent mood disorder of varying intensity sometimes attributed to a second diagnosis of poly-
28  substance dependency with a focus on alcohol which had been very substantial and more than

1  likely related to Plaintiff's psychiatric hospitalizations in 2003 and in 2004.  AR 1063.  Plaintiff

2  had treatment for an affective disorder with antidepressants with unclear results.  There also was

3  evidence of hypertension, some cardiac irritability leading to symptoms of palpitations, and a

4  mild to moderate level of COPD.  AR 1063-64.

5       Dr. Anderson testified that none of the psychiatric diagnoses meet the listing of

6  impairments.  He opined that since February 27, 2004, Plaintiff's affective disorder in

7  combination with a number of the physical disorders equaled listing 12.04.  On the Psychiatric

8  Review Technique form, Plaintiff has disturbance of mood, with sleep disturbance, and

9  psychomotor agitation or retardation.  AR 1065-68.

10      Dr. Anderson opined that as of February 27, 2004, Plaintiff had moderate limitations in

11 ADLs, marked limitations in social functioning, concentration, persistence and pace and two

12 episodes of decompensation.  AR 1068.  Before February 27, 2004, the ongoing substance abuse

13 would have been material to any disability.  AR 1069.  Dr. Anderson explained that if one looks

14 at the history and instability prior to sobriety, it would be very difficult to evaluate the degree of

15 his depressive symptomatology independently of his alcoholism.  The degrees of limitation with

16 the ongoing substance abuse would be marked, marked, marked and four episodes.  Prior to

17 February 27, 2004, the substance abuse was driving Plaintiff's mental disorder.  Dr. Anderson

18 testified that there were withdrawal symptoms and some psychiatric disturbance and difficulties,

19 but the real fuel of it was his substance abuse, predominately alcohol.  AR 1068-70.

20      In response to questions from the ALJ, the VE also testified and agreed to identify if his

21 testimony differed from the "DOT."  AR 1072.  The VE classified Plaintiff's past relevant work

22 and expected transferable skills from the positions of forklift operator, janitor, pallet maker,

23 maintenance worker, carpenter and farm machine operator.  AR 1073-74.

24      For the hypothetical questions, the ALJ identified a person with the same age, education

25 and past relevant work history as Plaintiff.  This person would have 11 years of education with

26 no GED.  He was able to communicate in simple, everyday types of English, but not in complex,

27 technical, scientific types of communication.  AR 1074-75.

28

1     For the first hypothetical, the ALJ asked the VE to assume a person who would be limited

2  to sitting, standing, and walking less than two hours each in a normal workday, lifting and/or

3  carrying less than 10 pounds even occasionally, and who could not deal with any amount of work

4  stress.  The VE testified that there are no past relevant or other jobs.  AR 1075.

5     For the second hypothetical, the ALJ asked the VE to assume an individual that would be

6  limited to jobs with occasional public contact and limited to simple, repetitive, routine types of

7  tasks.  This individual also could sit, stand, and walk six out of eight hours in a normal workday

8  with normal breaks and lift and/or carry a maximum of 35 pounds occasionally, 20 pounds

9  frequently.  This individual could never climb ropes or scaffolds, but occasionally could climb

10  ramps, stairs, or ladders and could frequently balance, stoop, kneel, crouch, or crawl.  This

11  person could not work around any concentrated exposure to fumes, odors, dust, gases, or poor

12  ventilation.

13     The VE testified that such a person could not do Plaintiff's past jobs, but could do other

14  jobs.  These jobs included an assembly position, 813.684-022, light, SVP 2, with 47,000

15  positions in the State; vehicle washers, 915.667-010, light, SVP 2, with 15,000 jobs in the State;

16  and dishwashers, 318.650-010, medium, SVP 2, with 100,000 jobs in the State.  The VE

17  affirmed that his testimony did not differ from the DOT.  AR 1075-76.

18     <u>Medical Record</u>

19     In July and August 2001, Plaintiff reported fatigue and dizziness.  AR 247-48, 252, 254.

20  Chest x-rays taken on July 12, 2001, showed hyperaeration and possible old TB.  AR 253.

21     On September 21, 2001, Ralph H. Wood, M.D., completed a consultative examination.

22  Plaintiff denied the use of alcohol or drugs, but continued to smoke a pack of cigarettes a day.

23  Following physical examination, Dr. Wood diagnosed Plaintiff with a lifelong history of drug

24  and alcohol abuse, currently clean and sober, a history of mild bronchial asthma with no evidence

25  of COPD, a history of being positive for hepatitis C, and a history of amputation of the right fifth

26  finger.  Dr. Wood opined that Plaintiff would be capable "for at least sedentary activity with

27  customary breaks for six-eight hours."  He could lift, push or pull up to 20 pounds and had fine

28  finger movement limitations with an essentially absent right fifth finger.  AR 159-61.

On October 11, 2001, Philip M. Cushman, Ph.D., a clinical psychologist, conducted a consultative psychological examination.  Following assessments, Dr. Cushman diagnosed Plaintiff with polysubstance dependence in partial remission, alcohol induced mood disorder with anxiety, mathematics disorder, antisocial personality disorder and a Global Assessment of Functioning ("GAF') of 55.  Dr. Cushman opined that Plaintiff was not currently capable of performing any detailed or complex tasks in a vocational setting, but was capable of performing simple and repetitive tasks of a visual-motor nature.  He was not capable of regularly attending or consistently participating due to his dysphoria and anxiety.  Dr. Cushman further opined that Plaintiff might benefit from ongoing psychotherapy once he reached sobriety and attained work, as a way of maintaining work.  He was not capable of working a normal workday or workweek and most likely could work up to 4 hours per day.  He was capable of accepting instructions from supervisors, but he indicated problems getting along with coworkers and the public.  He was not able to deal with the usual stressors encountered in a competitive work environment.  Dr. Cushman had serious reservations about Plaintiff's emotional stability in light of his significant substance abuse history and antisocial ways.  AR 163-68.

On November 8, 2001, Dr. Charlotte Bible, a state agency physician, completed a Mental Residual Functional Capacity Assessment form.  Dr. Bible noted that the categories were "predictive" if clean and sober.  She opined that Plaintiff was moderately limited in the ability to understand and remember detailed instructions, in the ability to carry out detailed instructions, in the ability to maintain attention and concentration for extended periods and in the ability to work in coordination with or proximity to others without being distracted by them.  He also was moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  He was moderately limited in the ability to interact appropriately with the general public, in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and in the ability to respond appropriately to changes in the work setting.  AR 169-72.

1    Dr. Bible also completed a Psychiatric Review Technique form.  Dr. Bible opined that

2  Plaintiff met Listing 12.09.  He had an organic mental disorder, personality disorder and

3  substance addiction disorder.  With drug and alcohol abuse, Plaintiff had marked restriction of

4  activities of daily living, marked difficulties in maintaining social functioning, marked

5  difficulties in maintaining concentration, persistence, or pace.  After twelve months of sobriety

6  and abstinence, Plaintiff would have moderate restrictions in these areas.  AR 173-86.

7    On February 1, 2002, a state agency medical consultant completed a Psychiatric Review

8  Technique.  The consultant opined that Plaintiff had an alcohol induced anxiety-related disorder

9  that did not precisely satisfy the diagnostic criteria.  AR 192.  Plaintiff also met the Listing for a

10  substance addiction disorder (12.09).  AR 195.  Plaintiff had moderate restriction of activities of

11  daily living, marked difficulties in maintaining social functioning and marked difficulties in

12  maintaining concentration, persistence or pace.  There was insufficient evidence of episodes of

13  decompensation.  AR 197.

14    On February 1, 2002, the state agency medical consultant also completed a Mental

15  Residual Functional Capacity Assessment form.  The consultant opined that without drugs and

16  alcohol, Plaintiff had moderate limitations in the ability to understand and remember detailed

17  instructions, in the ability to carry out detailed instructions, in the ability to maintain attention

18  and concentration for extended periods, and in the ability to work in coordination with or

19  proximity to others without being distracted by them.  AR 201.  He also had moderate limitations

20  in the ability to complete a normal workday and workweek without interruptions from

21  psychologically based symptoms and to perform at a consistent pace without an unreasonable

22  number and length of rest periods.  He had moderate limitations in the ability to interact

23  appropriately with the general public, in the ability to accept instructions and respond

24  appropriately to criticism from supervisors and in the ability to set realistic goals or make plans

25  independently of others.  AR 202.

26    In February and April 2002, Plaintiff complained of leg cramps.  He was prescribed

27  Quinine.  AR 237, 238.  A segmental pressure study of his lower extremities was normal.  AR

28  236.

1    On May 3, 2002, Plaintiff complained to Dr. Jose Rodriguez of leg cramping.  He was

2  taking quinine, Restoril and Zoloft.  AR 235.

3    On July 15, 2002, Plaintiff saw Dr. Debra J. Cheang, a psychiatrist at Stanislaus County

4  Behavioral Health and Recovery Services.  Plaintiff reported that his depression had been

5  worsening.  Dr. Cheang noted that Plaintiff had a history of good response to Zoloft, but did not

6  give it adequate time or increase the dose.  Plaintiff also had a long history of polysubstance

7  abuse, but reportedly had been clean and sober for one year, except for one drink the previous

8  month.  Plaintiff also reported some paranoia.  Dr. Cheang diagnosed major depressive disorder,

9  recurrent, moderate with polysubstance abuse by history.  Dr. Cheang planned to start Plaintiff on

10  Zoloft and refer him for counseling.  AR 278-79.

11    On August 8, 2002, Dr. G. C. Pickell provided a Complete Medical Report (Physical)

12  form.  On examination, Plaintiff had a wheeze, but an otherwise normal examination.  Dr. Pickell

13  diagnosed hip pain, leg cramps, COPD and Hepatitis C.  Plaintiff was to increase exercise and

14  quit smoking.  Dr. Pickell opined that Plaintiff's response to treatment was fair and his prognosis

15  was good.  AR 262.

16    Dr. Pickell also completed a Medical Assessment of Ability to Do Work-Related

17  Activities (Physical) form.  Dr. Pickell opined that Plaintiff's lifting/carrying,

18  sitting/standing/walking and use of hands or feet were not affected by his impairment.  Plaintiff

19  frequently could climb, stoop, crouch, kneel and crawl and continuously could balance.  Plaintiff

20  also could push/pull frequently and reach, handle, feel, hear and speak continuously.  He had no

21  environmental restrictions.  AR 263-67.

22    On August 20, 2002, Plaintiff reported some improvement with Zoloft.  However, Dr.

23  Cheang reported that Plaintiff missed his last appointment and ran out of meds.  He was restarted

24  on Zoloft.  AR 277.

25    On August 21, 2002, Dr. Cheang prepared a Complete Medical Report (Mental) form.

26  Dr. Cheang noted that she first treated Plaintiff on July 15, 2002.  She diagnosed him with major

27  depressive disorder, recurrent, moderate.  He had moderate improvement in response to treatment

28  and his prognosis was fair to good.  AR 270.

Dr. Cheang also completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) form.  She opined that Plaintiff had a good ability to follow work rules, to use judgment and to function independently.  He had a fair ability to relate to co-workers, deal with the public, interact with supervisors and maintain attention/concentration.  He had poor ability to deal with work stress.  He had poor ability to understand, remember and carry out complex job instructions and fair ability to understand, remember and carry out detailed, but not complex job instructions.  He had a good ability to understand, remember and carry out simple job instructions.  Dr. Cheang explained that Plaintiff had fair to poor memory and concentration, most likely related to his depression.  Dr. Cheang further opined that Plaintiff had fair to poor ability to relate predictably in social situations.  She detailed that he had poor interpersonal skills, he might react unpredictably to stressful situations and he had poor coping mechanisms.  AR 271-75.

Between August 2002 and October 2003, Plaintiff received treatment from Stanislaus County Behavioral Health and Recovery Services for depression and alcohol abuse.  AR 893-930.

On January 5, 2003, Plaintiff was admitted to Stanislaus Behavioral Health Center ("SBHC") for a 5150 danger to self.  Dr. Suzanne Meyer completed an internal medicine evaluation and assessed Plaintiff with hypertension, a questionable cardiac history, chronic obstructive pulmonary disease, hepatitis C and polysubstance abuse in partial remission.  AR 781-83.  Dr. Manolito Castillo completed an admission summary.  On mental status examination, Plaintiff felt depressed, with hopelessness and helplessness.  He denied active suicidal thoughts.  His memory and concentration appeared intact and his insight and judgment were fair.  Dr. Castillo diagnosed major depressive disorder, recurrent, severe, without psychotic features, and polysubstance dependence, with recent relapse on alcohol.  Dr. Castillo assigned a Global Assessment of Functioning ("GAF") of 30.  Plaintiff was restarted on Zoloft and was to continue with Wellbutrin.  AR 784-87.

On January 10, 2003, Dr. Alvin Neumeyer, of SBHC, completed a discharge summary.  On discharge, Dr. Neumeyer diagnosed Plaintiff with depressive disorder not otherwise

1    specified, polysubstance dependence in partial remission and alcohol abuse.  He was prescribed

2    Zoloft, Ambien, Bupropion and Ativan.  AR 774-77.

3        Plaintiff was again admitted to SBHC on January 20, 2003.  He was discharged on

4    January 24, 2003.  On discharge, he was assessed with major depression, recurrent, severe with

5    comorbid anxiety, history of previous substance abuse and alcohol abuse.  He was prescribed

6    Paxil, Ambien, Lotensin, Wellbutrin, Trazodone, Klonopin and aspirin.  AR 795-98.

7        A treadmill exercise study of Plaintiff's heart on February 3, 2003, was normal.  AR 887.

8        A liver exam completed on April 23, 2003, showed no abnormality.  AR 875.

9        On May 23, 2003, Plaintiff was admitted to SBHC on a 5150 for being a danger to self.

10   He was discharged on May 29, 2003, with a depressive disorder not otherwise specified, alcohol

11   dependence, opioid pain medication abuse and past history of polysubstance abuse.  On

12   discharge, Plaintiff was much improved and his prognosis fair.  The provider noted that if

13   Plaintiff could be "compliant with medication and sober from alcohol, his prognosis tend[ed] to

14   be better."  He was prescribed Paxil, Trazodone, Gabitril, Quinine, Flovent and Lotensin.  AR

15   813-16.

16       A Holter monitor report dated June 16, 2003, was benign.  AR 872.

17       On July 8, 2003, Dr. Rosemary Tyl, a state agency physician, completed a Mental

18   Residual Functional Capacity Assessment form.  Dr. Tyl opined that without drug and alcohol

19   abuse, Plaintiff had moderate limitations in the ability to understand and remember detailed

20   instructions, in the ability to carry out detailed instructions, in the ability to maintain attention

21   and concentration for extended periods, in the ability to complete a normal workday and

22   workweek without interruptions from psychologically based symptoms, to perform at a

23   consistent pace without an unreasonable number and length of rest periods, and in the ability to

24   interact appropriately with the general public.  AR 835-37.

25       Dr. Tyl also completed a Psychiatric Review Technique form.  She opined that Plaintiff

26   had a depressive disorder not otherwise specified, antisocial traits and a substance addiction

27   disorder.  He currently had moderate restriction of activities of daily living, moderate difficulties

28   in maintaining social functioning and moderate difficulties in maintaining, concentration,

persistence or pace.  There was insufficient evidence of episodes of decompensation.  AR 839-52.

On July 10, 2003, Dr. Clark E. Gable completed a consultative internal medicine evaluation.  Following an examination, Dr. Gable diagnosed Plaintiff with Hepatitis C positivity with no evidence of chronic liver disease, hypertension under good control with medication, significant depression with two major hospitalizations, chronic obstructive pulmonary disease by history, chronic arrhythmias and a history of gastroesophageal reflux disease.  Dr. Gable opined that Plaintiff could sit for six hours a day.  He could stand or walk for six hours, provided he could do so on his own terms, stopping when needed.  He should not climb more than a flight of stairs at a time.  He could lift, push or pull 35 pounds occasionally and 20 pounds regularly. There was no limitation on fine finger or hand movements.  Dr. Gable ordered pulmonary function tests that were essentially normal.  AR 853-55.

On August 8, 2003, Dr. Thien Nguyen, a state agency physician, completed a Physical Residual Functional Capacity Assessment form.  Dr. Nguyen opined that Plaintiff could lift 20 pounds occasionally and 20 pounds frequently.  He could stand and/or walk about 6 hours in an 8-hour workday, could sit about 6 hours in an 8-hour workday and could push and/or pull without limitation.  He also could occasionally climb ramps, stairs and ladders, but could never climb a rope or scaffolds.  He frequently could balance, stoop, kneel, crouch and crawl.  He had no manipulative, visual or communicative limitations, but had to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  AR 858-65.

On December 12, 2003, a state agency physician completed a Mental Residual Functional Capacity Assessment form.  The physician opined that without drug and alcohol abuse, Plaintiff had moderate limitations in the ability to understand and remember detailed instructions and in the ability to carry out detailed instructions.  He also had moderate limitations in the ability to interact appropriately with the general public and in the ability to accept instructions and respond appropriately to criticism from supervisors.  AR 960-62.

The state agency physician also completed a Psychiatric Review Technique form.  The physician opined that as of January 2003, Plaintiff met the listing for substance addiction

1   disorder.  He also had depression and anxiety not otherwise specified.  The physician further

2   opined that Plaintiff had moderate restriction in the activities of daily living, marked difficulties

3   in maintaining social functioning and marked difficulties in maintaining concentration,

4   persistence or pace.  There was insufficient evidence of episodes of decompensation.  AR 964-

5   77.

6          On February 27, 2004, Plaintiff was admitted to the hospital on a "5150 for danger to self

7   and danger to others."  He reportedly forced himself into someone's home and sat down on the

8   couch, rambling about needing to make a phone call to get some help.  In the hospital, Plaintiff

9   could not remember the details of what happened.  He was delusional about having pneumonia

10  and was worried about fluid building up in his lungs.  A medical check revealed no evidence of

11  any pneumonia or fluid build up.  On mental status examination, his thought process was very

12  mildly disorganized and he had some residual delusion about having an active pulmonary

13  problem and an unrealistic fear of fluid building up in his lungs.  Plaintiff was diagnosed with

14  major depressive disorder, rule out psychosis not otherwise specified, rule out drug-induced

15  psychosis.  AR 422-24, 548-63.

16         On March 4, 2004, Plaintiff was returned to the emergency room for medical clearance.

17  after being taken to SBHC on a 5150 hold.  While at SBHC, he was spitting on the floor of the

18  psych facility.  In the emergency room, he was placed into four-point restraints.  He had gross

19  paranoia and somewhat grandiose delusions.  He was diagnosed with paranoid schizophrenia,

20  agitation, danger to others and bronchitis.  He was sent back to SBHC.  AR 564-66.

21         On March 4, 2004, Plaintiff was referred to Ceres Regional Services ("CRS") after

22  discharge from SBHC.  According to treatment records, Plaintiff was non-compliant with his

23  treatment because he was homeless and moved in and out of the area.  He was discharged from

24  CRS on June 3, 2004.  AR 1022.

25         On April 20, 2004, Plaintiff was found unresponsive in the park and taken to the

26  emergency department for evaluation.  He was discharged with a diagnosis of alcohol

27  intoxication.  AR 579-80.

28

On May 10, 2004, Plaintiff was referred to SBHC by his doctor because he was suicidal. Plaintiff reportedly tried to shoot himself with a friend's gun, but it misfired.  Plaintiff was discharged on May 13, 2004, with diagnoses of depressive disorder not otherwise specified, polysubstance dependence in early remission.  He was discharged with Paxil, Seroquel and Atenolol.  AR 1024-27.

On June 20, 2004, Plaintiff received emergency room treatment for complaints of nausea, vomiting and weakness. AR 592-93.  He was admitted to SBHC because he was suicidal. Plaintiff was discharged on June 24, 2004, with diagnoses of substance induced mood disorder, alcohol dependence and polysubstance dependence.  His discharge medications included Paxil, Combivent, Qvar and Atenolol.  AR 1017-21.

A liver biopsy taken in June 2004 revealed chronic hepatitis C.  AR 508.

On August 18, 2004, Plaintiff was admitted to SBHC due to suicidal ideations and visual hallucinations after he was not compliant with medications.  He was discharged on August 21, 2004, with diagnoses of depressive disorder NOS, alcohol abuse and opiate dependence by history.  On discharge mental status examination, Plaintiff's mood, insight and judgment were good, but his affect was restricted.  His thoughts were linear and logical, with no hallucinations, paranoia or delusion.  His discharge medications included Paxil, Seroquel and Atenolol.  AR 1012-15.

On October 5, 2004, Plaintiff sought emergency room treatment for complaints of right upper quadrant pain and vomiting.  X-rays of his chest and abdomen were negative.  Plaintiff reportedly discontinued his heparin lock and left without further treatment.  AR 603, 610.

On October 27, 2004, Plaintiff was again hospitalized at SBHC.  Plaintiff self-referred due to suicidal/homicidal ideation.  He was discharged on November 2, 2004, with diagnoses of alcohol-induced psychotic disorder, alcohol dependence and poly-substance abuse.  His discharge medications included Paxil, Seroquel, Tenormin, Thiamine and an inhaler.  AR 1005-09.

On February 1, 2005, Plaintiff sought emergency room treatment and complained of chest pain, sputum production and liver problems.  He told Dr. Scott Oslund that he wanted to stay in

1  the hospital to get rest and get some nutrition.  He was offered a sandwich and beverage.  While

2  in a bed, another patient came in who was on a medical legal hold.  Plaintiff then decided that he

3  was suicidal and was going to stab himself if he did not get to stay in the hospital.  Dr. Oslund

4  opined that Plaintiff was significantly manipulative.  Plaintiff was diagnosed with gastritis, along

5  with severe and chronic alcoholism.  He also was diagnosed as manipulative.  AR 462.

6        A lumbar spine radiological exam completed in July 12, 2005, showed vascular sclerosis.

7  AR 509.

8        On March 6, 2006, Plaintiff sought emergency room treatment for complaints of

9  palpitations.  He denied alcohol or drug use.  An EKG was normal.  AR 663-66.

10        On April 22, 2006, David Pingitore, Ph.D., a clinical psychologist, completed a

11  consultative psychological examination.  Dr. Pingitore observed that Plaintiff was friendly and

12  generally cooperative, but at times gave evidence of a compromised effort on psychological tests.

13  Although Plaintiff reported being hospitalized twice in the previous two years for

14  psychiatric/psychological episodes, he currently was not receiving any psychotropic medications

15  or other forms of treatment.  As to his substance abuse history, Plaintiff reported being clean and

16  sober from alcohol for one year and clean from cocaine for two years.  He smoked one pack of

17  cigarettes per day.  As to his arrest and prison history, Dr. Pingitore commented that Plaintiff

18  appeared to significantly underreport his arrest and prison history.  As to work history, Plaintiff

19  engaged in a variety of work-like activities at his current treatment center.

20        On mental status examination, Plaintiff's mood was sullen and reserved and his affect

21  was generally restricted.  Dr. Pingitore noted that psychological test results were "a likely

22  unreliable indicator of the claimant's current level of functioning" because Plaintiff appeared to

23  give less than adequate effort on certain subtests.  On the Rey-15, Plaintiff's performance

24  appeared compromised and was suggestive of malingering.  Following testing, Dr. Pingitore

25  diagnosed Plaintiff with malingering and alcohol abuse in reported full remission.  Plaintiff also

26  had a personality disorder with antisocial features.  Dr. Pingitore concluded that Plaintiff's

27  persistence and pace were adequate and he appeared able to execute simple one- and two-step

28  commands.  He also appeared able to understand increasingly complex verbal questions.  By self-

1    report and history, he appeared to have some potential difficulty interacting with supervisors,

2    coworkers and the general public.  Dr. Pingitore opined that there was little objective evidence

3    that Plaintiff was unable to engage in substantial employment by reason of a mental disorder.

4    However, he would need to have his funds monitored until he could demonstrate continued

5    sobriety.  AR 413-17.

6        Dr. Pingitore also completed a Mental Assessment of Ability to Do Work-Related

7    Activities form.  He opined that Plaintiff had poor ability to relate to co-workers, but fair ability

8    to deal with the public, use judgment, interact with supervisors, deal with work stress, and

9    function independently.  He also had a poor ability to behave in an emotionally stable manner

10   and to relate predictably in social situations.  AR 420-21.

11       ALJ's Findings

12       The ALJ found that Plaintiff had the severe impairments of an affective disorder

13   (depression), hepatitis C, COPD and substance abuse disorder.  The ALJ determined that if

14   substance abuse was excluded from consideration, Plaintiff's impairments equaled Listing 12.04

15   since February 27, 2004, but not prior to that date.  If substance abuse was excluded prior to

16   February 27, 2004, Plaintiff retained the residual functional capacity ("RFC") to perform the

17   physical exertional and nonexertional requirements of work.  He could lift and carry up to thirty-

18   five pounds occasionally and twenty pounds frequently and he could stand/walk up to six hours

19   in an eight-hour workday.  Although he could not climb ropes or scaffolds, he occasionally could

20   climb ramps, stairs and ladders.  He also frequently could balance, stoop, kneel, crouch and

21   crawl.  He had to avoid concentrated exposure to fumes odors, dusts, gases and poor ventilation.

22   He could perform only simple, routine, repetitive tasks and could have occasional contact with

23   the public.  AR 330-31.  Given this RFC, prior to February 27, 2004, Plaintiff was unable to

24   perform his past relevant work.  The ALJ found that Plaintiff's additional nonexertional

25   limitations did not allow him to perform the full range of medium work prior to February 27,

26   2004, if substance abuse is excluded, but using the Grids as a framework for decision-making

27   there were a significant number of jobs in the national economy that he could perform.  The ALJ

28

concluded that alcoholism was material to the determination of disability prior to February 27, 2004, but Plaintiff had been disabled since that time.  AR 331.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  E.g., Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  See Sanchez v. Sec'y of Health and Human Serv., 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(g), 416.920 (a)-(g).  Applying the process in this case, the ALJ found that Plaintiff: (1) has not engaged in substantial gainful activity since October 15, 2001; (2) has an impairment or a combination of impairments that is considered "severe" (affective disorder, hepatitis C, COPD and substance abuse disorder) based on the requirements in the Regulations (20 C.F.R. § 416.921); (3) if substance abuse is excluded from consideration, his combination of impairments has equaled one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4 ("Listing") since February 27, 2004, but not prior to that date; (4) if substance abuse is excluded, prior to February 27, 2004, he could not perform his past relevant work; but (5) there were jobs existing in significant numbers in the national economy that he can perform prior to February 27, 2004.  AR 330-31.

Here, Plaintiff contends that the ALJ erred (1) in failing to find that Plaintiff's combined impairments equaled a Listing prior to February 27, 2004; (2) in rejecting the opinions of Drs. Cushman, Cheang and Wood; (3) in failing to comply with the regulations governing mental impairments; (4) in failing to resolve the conflicts between the Dictionary of Occupational Titles and the Vocational Expert's testimony; and (5) in presenting the Vocational Expert with defective hypotheticals and a defective RFC.

**DISCUSSION**

A.    Materiality of Drug and Alcohol Abuse Prior to February 27, 2004

Plaintiff contends that the ALJ erred in establishing his onset date of disability.  He claims that medical evidence fully supports that his disability began on May 16, 2001.

In his decision, the ALJ found that Plaintiff was disabled, but that drug and alcohol abuse ("DAA") was material to his disability before February 27, 2004.  A claimant is ineligible for benefits if alcoholism or drug addiction would "be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).  In a case with evidence of drug or alcohol abuse, the claimant bears the burden of proving that his substance abuse "is not a contributing factor

1  material to his disability." *Parra*, 481 F.3d at 748.  For purposes of determining whether a

2  claimant's substance abuse is a material contributing factor, the critical question is whether the

3  claimant would still be disabled if he stopped using drugs or alcohol.  20 C.F.R. §§

4  404.1535(b)(1), 416.935(b)(1).  In making this assessment, the ALJ is to evaluate which of the

5  claimant's physical and mental limitations "would remain if [the claimant] stopped using drugs or

6  alcohol and then determine whether any or all of [the claimant's] remaining limitations would be

7  disabling."  20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2)  Thus, the crux of Plaintiff's argument is

8  whether DAA was material to his disability prior to February 27, 2004, not the "onset date."

9       In challenging the ALJ's materiality determination, Plaintiff first argues that if Dr.

10  Anderson, the medical expert, had considered Plaintiff's combined physical and mental

11  limitations for the period prior to February 27, 2004, then "Plaintiff would have been found just

12  as limited as he was after that date."  Opening Brief, p. 8.  This argument is not persuasive.  With

13  regard to Plaintiff's mental limitations, Dr. Anderson found that substance abuse was driving

14  Plaintiff's mental disorder prior to February 27, 2004.  AR 1070.  In other words, Plaintiff's

15  mental limitations resulted from his alcohol abuse.  As to the remaining physical limitations,

16  Plaintiff references the limitations identified by Dr. Wood in September 2001, but fails to

17  demonstrate how they rendered him "just as limited as after" February 27, 2004.

18       Plaintiff next argues that Dr. Anderson was unable to separate the degree of restriction

19  resulting from substance abuse from Plaintiff's other impairments prior to February 2004.  He

20  claims that because Dr. Anderson could not make this separation, a finding of "not material"

21  would be appropriate.[2]  It is not clear that Dr. Anderson was unable to separate the degree of

22  restriction from substance abuse.  Dr. Anderson expressly testified that prior to February 27,

23  2004, "the substance abuse was really driving [Plaintiff's] mental disorder."  AR 1070.

24

25

26       [2]To support this claim, Plaintiff relies upon an internal agency document, Emergency Teletype No.
   EM-96200.  Assuming without deciding that the Teletype provision applies, the Ninth Circuit has explained that

27  internal agency documents such as these do not carry the force of law and are not binding upon the agency. *See, e.g.,*
   *Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003); *Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir.2000).

28  Therefore, they do not create judicially enforceable duties, and the Court does not review allegations of
   noncompliance with their provisions. *See Moore*, 216 F.3d at 869.

Plaintiff claims that Dr. Anderson provided an unequivocal "No" in response to the ALJ's questions regarding whether he could determine degree of limitation prior to February 27, 2004 in the absence of substance abuse.  Reply Brief, p. 4 and n. 1.  The transcript reflects the following exchange:

> Q:    And is it possible to determine what those degrees of limitation would have been prior to February 27th, '04 in the absence of any substance abuse or not?
>
> A:    No.  It's, it's very, it's very, very – what, what, what's so noteworthy is the – what a change his life has been since he's become sober and the structure that's provided by the Rock of Recovery. . . . But prior to that this was – it appears to me in the record – and we can go through it sort of quarter by quarter of his life, every three months, that the substance abuse was really driving his mental disorder; there were withdrawal symptoms, there, I mean, there were . . . probably some psychiatric disturbance and difficulties; however, the, the real fuel of that was his substance abuse and, and alcohol appears to be the predominant one.

AR 1069-70.

According to the transcript, Dr. Anderson did not unequivocally testify that it was impossible to determine the degree of limitation in the absence of DAA.  Rather, it is clear that the ALJ asked whether it was possible or not to determine the degree of limitation and Dr. Anderson responded that prior to February 2004, DAA was driving Plaintiff's mental disorder.  He also agreed that before February 27, 2004, the ongoing substance abuse would have been material to any disability.  AR 1069.

B.    Evaluation of Physician Opinions

Plaintiff contends that the ALJ committed reversible error when he failed to give valid reasons for rejecting the opinions of Drs. Cushman, Cheang and Wood.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987).  The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).  As is the case with the opinion of a

treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting

the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506.  And like the

opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another

doctor, can only be rejected for specific and legitimate reasons that are supported by substantial

evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

Dr. Cushman

Plaintiff asserts that the ALJ erred in failing to offer any reason for rejecting the

limitations assessed by psychological consultative examiner, Dr. Cushman.

In this case, the ALJ discussed Dr. Cushman's opinion that Plaintiff had polysubstance

dependence in partial remission, alcohol induced mood disorder with anxiety, mathematics

disorder and antisocial personality disorder.  The ALJ also considered Dr. Cushman's opinion

that Plaintiff was not able to deal with the usual stressors encountered in a competitive work

environment.  AR 317-18.

Plaintiff argues that the ALJ should have credited Dr. Cushman's opinion that Plaintiff

was "not capable of working a normal workday or workweek" and "was not able to deal with the

usual stressors encountered in a competitive work environment."  AR 168.  As a general matter,

Plaintiff appears to overlook that Dr. Cushman's opinion was premised largely on diagnoses of

polysubstance dependence and alcohol induced mood disorder with anxiety.  Plaintiff does not

indicate how Dr. Cushman's limitations, absent DAA, are inconsistent with the ALJ's final

determination.  Dr. Cushman clearly opined that Plaintiff was capable of performing at least

simple and repetitive tasks even with DAA.  AR 168.

Furthermore, an ALJ need not recite any magic words to reject a physician's opinion so

long as the record reveals specific, legitimate inferences that may be drawn from the ALJ's

opinion justifying the decision not to adopt a physician's opinion. *Magallanes v. Bowen*, 881

F.2d 747, 755 (9th Cir. 1989).  Plaintiff overlooks the ALJ's findings regarding Plaintiff's

credibility and the inconsistent statements made to Dr. Cushman.  The ALJ specifically

considered that Plaintiff told Dr. Cushman he had stopped working because of dizziness caused

by pneumonia, but the records did not show treatment for pneumonia.  The ALJ also considered

1  Plaintiff's inconsistent statements to Dr. Cushman regarding drug abuse and an inability to work.

2  AR 325-26.  A physician's opinion properly may be disregarded where it is based on a claimant's

3  discounted subjective complaints.  *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d

4  595, 602 (9th Cir. 1999); *see also Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002); *Fair v.*

5  *Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).  Plaintiff has not challenged the ALJ's credibility

6  determination.

7                    Dr. Wood

8          Plaintiff contends that the ALJ erred by rejecting the opinion of Dr. Wood, a consultative

9  examiner.  In September 2001, Dr. Wood opined the Plaintiff was capable of "at least sedentary

10  activity," and could lift, push or pull up to 20 pounds.  Dr. Wood found no limitation in hand

11  movements, but found fine finger movement limitations "with an essentially absent right fifth

12  finger."  AR 161.

13          The ALJ both discussed and assigned little weight to Dr. Wood's opinion.  In so doing,

14  the ALJ reasoned as follows:

15              The undersigned gives great weight to the assessment of the State Agency
           physicians, which is consistent with the assessment of Dr. Gable.  Although Dr.
16              Pickell was the treating physician, the undersigned finds that the claimant has
           some limitations, as Dr. Pickell did not have the opportunity to review the file.
17              Although Dr. Wood stated that the claimant might be limited in fine finger
           manipulation due to the loss of the small right finger, the amputation occurred
18              several years in the past, and the claimant was able to work in a variety of job
           settings since then.  The undersigned gives little weight to this portion of Dr.
19              Wood's assessment.

20  AR 328.

21          Plaintiff asserts that the ALJ's rationale for rejecting the finger limitations is reversible

22  error because the ALJ found that Plaintiff could not perform his past relevant work.  Plaintiff

23  appears to misunderstand the ALJ's explanation for assigning little weight to Dr. Wood's

24  opinion.  The ALJ was not assessing whether Plaintiff could perform his past relevant work, but

25  whether Plaintiff's amputated finger resulted in fine finger limitations.  The ALJ considered

26  Plaintiff's ability to work in a variety of job settings and the length of time that Plaintiff had been

27  functioning with an absent small right finger.  These reasons for rejecting Dr. Wood's limitation

28  were based on logical inferences drawn from the evidence.

Plaintiff also complains that the ALJ provided no reasons for rejecting the remaining aspects of Dr. Wood's opinion.  In particular, Plaintiff faults the ALJ for rejecting, without explanation, Dr. Wood's opinion that Plaintiff was limited to sedentary work.  As a practical matter, an ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the physician's opinions.  *Magallanes*, 881 F.2d at 753-754.  The record here demonstrates that the ALJ rejected the remainder of Dr. Wood's opinion to the extent it was inconsistent with that of other medical sources, including the state agency physicians.

The ALJ did not err in rejecting Dr. Wood's opinion because it conflicted with other credible medical evidence.  First, the ALJ gave "great weight" to the opinion of Dr. Anderson, who testified at the hearing and who reviewed all of the relevant medical evidence.  AR 328.  As Dr. Anderson was subjected to cross-examination, the ALJ could properly rely on his opinion in rejecting the contrary opinion of Dr. Wood.  *See Andrews*, 53 F.3d at 1042 (stating that ALJ can legitimately credit testimony of nonexamining expert who testifies at hearing); *Provenzano v. Astrue*, 2009 WL 4906679, *3 (C.D.Cal. Dec. 17, 2009) (ALJ properly could rely on non-examining physician who was subjected to cross-examination).

Second, the ALJ relied on the opinion of Dr. Gable, a consultative examiner, whose opinion conflicted with Dr. Wood's opinion.  AR 328.  Specifically, Dr. Gable found that Plaintiff could sit for six hours a day.  He could stand or walk for six hours, stopping when needed.  He should not climb more than a flight of stairs at a time.  He could lift, push or pull 35 pounds occasionally and 20 pounds regularly.  AR 853-55.  A consultive examiner's opinion constitutes substantial evidence*. Tonapetyan v. Haler*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that contrary opinion of examining source constituted "specific and legitimate reason" for rejecting opinion of a treating source).

Finally, Plaintiff's claim that Dr. Wood limited him to sedentary work is not an accurate characterization of the record.  Dr. Wood opined that Plaintiff was capable of "at least" sedentary work.  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often

necessary in carrying out job duties. Jobs are sedentary if walking and standing are required

occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).  Dr.

Wood opined that Plaintiff could lift, push or pull up to 20 pounds, which is greater than the

lifting limitations of sedentary work. Further, Dr. Wood assigned Plaintiff no walking or standing

limitations.  AR 159-61.  As such, Dr. Wood's statement that Plaintiff could perform "at least"

sedentary work reflects a minimum, not a maximum, residual functional capacity.

### Dr. Cheang

Plaintiff next contends that the ALJ did not provide legitimate reasons for rejecting the

opinion of his treating psychiatrist, Dr. Cheang.  It is true that the medical opinion of a claimant's

treating physician is entitled to "special weight." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir.

1988); *Valencia v. Heckler*, 751 F.2d 1082, 1088 (9th Cir. 1985).  However, an ALJ may reject a

contradicted treating physician's opinion on the basis of clear findings that set out specific,

legitimate, reasons for the rejection.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Here, the ALJ gave little weight to Dr. Cheang's opinion based upon: (1) the length of

treatment (two months); (2) the lack of consistent medication use by Plaintiff; and (3) Dr.

Cheang making "little mention" of Plaintiff's substance abuse in her records.  AR 328.  The

ALJ's findings concerning the length of treatment and the lack of consistent medication use are

specific and legitimate reasons for rejecting Dr. Cheang's opinion.  *See* 20 C.F.R. §§

404.1527(d)(2)(i) & (ii), 416.927(d)(2)(i) & (ii) (stating that the length of treatment and the

nature and extent of treatment affect the weight accorded to medical opinions); *see also Connett*

*v. Barnhart*, 340 F.3d 871, 875 (9th Cir.2003) (where a treating physician's conclusions about a

claimant's functional limitations "are not supported by his own treatment notes," the ALJ may

reject that opinion); *Baylon v. Astrue*, 2008 WL 5076442, *6 n. 6 (C.D.Cal. Nov. 29, 2008)

(ALJ's findings concerning the lack of consistent and more aggressive treatment were specific

and legitimate reasons for rejecting physician opinion).

Plaintiff contends that the failure to mention substance abuse is not a legitimate reason to

discount the opinion because Dr. Cheang's assessment was based on a major depressive disorder,

not substance abuse.  The Court finds that the ALJ did not err in considering Dr. Cheang's failure

1   to account for the effect of Plaintiff's substance abuse on his mental impairment.  This is not a

2   matter of the ALJ disregarding Dr. Cheang's opinion, but rather a recognition by the ALJ of the

3   responsibility under Social Security law to determine whether, absent drug or alcohol addiction,

4   the mental impairment would be disabling.  *See, e.g., Roberts v. Astrue*, 2009 WL 2488106, *2

5   (C.D.Cal. Aug. 12, 2009) (finding that the ALJ properly considered treating physician's opinion

6   regarding mental impairments where treating psychiatrist failed to account for the effect of

7   substance abuse on the underlying mental health problems).

8   C.      Mental Residual Functional Capacity

9          Plaintiff argues that the ALJ's mental RFC finding for simple, routine, repetitive tasks was

10  inconsistent with his finding of moderate deficiencies in concentration, persistence, or pace.  AR

11  322, 328.  The Ninth Circuit has rejected Plaintiff's argument.  In *Stubbs-Danielson v. Astrue,* 539

12  F.3d 1169, 1174 (9th Cir. 2008), the claimant argued that the ALJ's RFC for simple, routine,

13  repetitive work failed to capture a moderate limitation in the ability to perform at a consistent

14  pace.  Even though the vocational expert testified that anything more than a mild limitation with

15  respect to pace would preclude employment, the ALJ rejected this conclusion, in part, because it

16  did not address the claimant's RFC.  In concluding that the ALJ's RFC properly incorporated the

17  limitations regarding attention, concentration and adaptation, the Court explained:

18          The ALJ translated Stubbs-Danielson's condition, including the pace and mental
        limitations, into the only concrete restrictions available to him-Dr. Eather's recommended
19      restriction to "simple tasks."  This does not, as Stubbs-Danielson contends, constitute a
        rejection of Dr. McCollum's opinion.  Dr. Eather's assessment is consistent with Dr.
20      McCollum's 2005 MRFCA, which found Stubbs-Danielson is "not significantly limited"
        in her ability to "carry out very short simple instructions," "maintain attention and
21      concentration for extended periods," and "sustain an ordinary routine without special
        supervision."  As two of our sister circuits have recognized, an ALJ's assessment of a
22      claimant adequately captures restrictions related to concentration, persistence, or pace
        where the assessment is consistent with restrictions identified in the medical testimony.
23      See Howard v. Massanari, 255 F.3d 577, 582 (8th Cir.2001) (where state psychologist
        both identified claimant as having deficiencies of concentration, persistence or pace and
24      pronounced claimant possessed the ability to "sustain sufficient concentration and
        attention to perform at least simple, repetitive, and routine cognitive activity without
25      severe restriction of function," ALJ's hypothetical including ability to perform "simple,
        routine, repetitive tasks" adequately, captured claimant's deficiencies in concentration
26      persistence or pace); Smith v. Halter, 307 F.3d 377, 379 (6th Cir.2001) (where ALJ's
        hypothetical incorporated concrete restrictions identified by examining psychiatrist
27      regarding quotas, complexity, and stress, ALJ did not err in failing to include that claimant
        suffered from deficiencies in concentration, persistence, or pace).

28

The Eighth Circuit's decision in *Howard* is directly on point. There, the court explicitly rejected a claim that an ALJ's hypothetical describing an ability to do "simple, routine, repetitive work" failed to capture deficiencies in concentration, persistence, or pace. The court noted the state psychologist's findings which concluded that the claimant, despite certain pace deficiencies, retained the ability to do simple, repetitive, routine tasks. See *Howard, 255 F.3d at 582*. The medical evidence by Dr. Eather in the present case reflects the same conclusion.

539 F.3d at 1174.

Based on this Circuit's precedent, the ALJ did not err by finding that Plaintiff was capable of simple, routine, repetitive work despite a moderate limitation in maintaining concentration, persistence or pace.

D.   Conflict Between Dictionary of Occupational Titles and VE Testimony

Plaintiff asserts that ALJ erred by relying on testimony that deviated from the Dictionary of Occupational Titles ("DOT"). Specifically, Plaintiff claims that there is conflict between the ALJ's limitation of Plaintiff to "simple, routine, repetitive tasks" and the VE's testimony that Plaintiff could do jobs that the DOT categorizes at reasoning "level 2." Contrary to Plaintiff's contention, a reasoning level of 2 does not conflict with a limitation to simple, routine and/or repetitive work tasks. *See, e.g., Hernandez v. Astrue*, 2010 WL 3835791, *5 (E.D.Cal. Sept. 29, 2010) (holding that a reasoning level of two "does not conflict with a RFC's limitation to simple, repetitive tasks"); *Moua v. Astrue, 2009 WL 997104, *12-13 (E.D.Cal. 2009); Angulo v. Astrue, 2009 WL 817506, *11-12 (E.D.Cal. 2009); Issac v. Astrue, 2008 WL 2875879, *3-4 (E.D.Cal. 2008); see also Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005)* (holding that DOT level-two reasoning appears consistent with a plaintiff's RFC which is limited to simple, repetitive work). Therefore, the ALJ properly relied on the VE's testimony. *Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005)* (ALJ may take administrative notice of any reliable job information, including information provided by a VE); *Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir.1995)* (same).

E.   Vocational Expert Testimony

As a final matter, Plaintiff asserts that the VE's testimony has no evidentiary value because the ALJ's hypothetical question did not include limitations arising from Plaintiff's amputated little finger and the limitations assessed by Drs. Wood, Cheang and Cushman.

The hypothetical posed to the vocational expert must accurately reflect the claimant's physical and mental limitations that are determined credible and supported by the record. However, the ALJ may exclude restrictions in the hypothetical that are unsupported by the record or discredited as unreliable. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir.2001); *Embrey*, 849 F.2d at 423; *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir.1991).

Here, the Court has determined that the ALJ properly rejected the limitations assessed by Drs. Wood, Cheang and Cushman, including limitations attributed to Plaintiff's amputated little finger.  Accordingly, the ALJ was not required to include these limitations in the hypotheticals posed to the VE.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Edward Hunga.

IT IS SO ORDERED.

**Dated:   December 1, 2010**          **/s/ Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE